IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, not in its individual capacity, but solely as TRUSTEE FOR MFRA TRUST 2015-2 | § § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 5:20-CV-254-H-BQ |
| v. | § § | |
| MARIA MARTINEZ, *et al.* | § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

The United States District Judge has automatically referred this case to the United States Magistrate Judge for pretrial management, including decisions for non-dispositive matters and findings and recommendations as to dispositive matters. Before the Court is Plaintiff Wilmington Trust, National Association, not in its individual capacity, but solely as trustee for MFRA Trust 2015-2's (Wilmington) Motion for Default Judgment against Defendants Maria Martinez, Rita Alcorta Salazar, Justino Alcorta, and John Bartolo Alcorta (Defendants)[1] filed November 25, 2020. ECF No. 11. Defendants have not responded to the motion or otherwise appeared in this action. Having considered the relevant pleadings and applicable law, the undersigned recommends that the District Judge **GRANT** Wilmington's Motion for Default Judgment.

---

[1] To avoid confusion the Court will refer to individual Defendants by their first names.

I. **Background**

A. **Factual Background**

On October 26, 2020, Plaintiff Wilmington filed this action against Defendants, seeking foreclosure on real property located at 910 South 11th Street, Slaton, Texas 79364 (the Property). Compl. 3–4, ECF No. 1. The Property is more particularly described as follows:

> LOT TEN (10) AND THE SOUTH HALF (S/2) OF LOT ELEVEN (11), BLOCK FIFTY-FOUR (54), SOUTH SLATON ADDITION TO THE CITY OF SLATON, LUBBOCK COUNTY, TEXAS, ACCORDING TO THE MAP, PLAT AND/OR DEDICATION DEED THEREOF RECORDED IN VOLUME 26, PAGE 204 OF THE REAL PROPERTY RECORDS OF LUBBOCK COUNTY, TEXAS.

*Id.* at 4. According to the Complaint, Defendant Maria and Decedent Benancio Alcorta executed a Texas Home Equity Adjustable Rate Note (Note) on February 18, 2005, in favor of Wells Fargo Bank, N.A. (Wells Fargo) in the principal amount of $52,000.00 and bearing interest at the rate of 9.375% per annum. *Id.* at 3–4; Compl. Ex. A, ECF No. 1-1. Benancio and Maria contemporaneously executed a Texas Home Equity Security Instrument (Security Instrument) that granted a security interest in the property to Wells Fargo to ensure repayment under the Note. Compl. 3–4; Compl. Ex. B, ECF No. 1-1. Under the terms of the Note and Security Instrument (collectively, the Loan Agreement), Benancio and Maria agreed to pay when due the principal and interest on the debt evidenced by the Note, as well as any applicable charges and fees due under the Note. Compl. 5; Compl. Ex. A. The Loan Agreement provides that should Benancio and Maria fail to make payments on the Note as they become due, or fail to comply with any or all of the covenants of the Security Instrument, the lender may enforce the Security Instrument by selling the property according to law and the provisions set out in the Loan Agreement. Compl. 5; Compl. Exs. A, B. On January 28, 2016, Wells Fargo transferred the Loan Agreement to Wilmington

under an Assignment of Deed of Trust, filed in the public records of Lubbock County, Texas. Compl. Ex. C, ECF No. 1-1.

Benancio passed away on July 12, 2020 and, according to Wilmington, no probate was opened for his estate. Compl. 5. His heirs, Defendants Maria, Rita, Justino, and John,[2] thus acquired his interest in the Property upon his death under Texas Estates Code §§ 101.001(b) and 101.051. *Id.* Wilmington asserts payment has not been made in accordance with the Loan Agreement, and the agreement has been in default since May 1, 2020. *Id.* On July 7, 2020, Wilmington sent a Notice of Default to Benancio and Maria in accordance with the Loan Agreement, advising that they would need to pay $2,514.31 by August 11, 2020, to cure the default. *Id.*; Compl. Ex. D, ECF No. 1-1. On September 9, 2020, Wilmington sent a Notice of Acceleration of Loan Maturity to Benancio's Estate and Maria, explaining that the maturity date of the Note had been accelerated because of the failure to cure the default. Compl. 5; Compl. Ex. E, ECF No. 1-1. Wilmington now seeks to foreclose on the mortgage and apply such proceeds to the Note. Compl. 6.

### B. Procedural Background

On November 3, 2020, Defendants Maria, John, Justino, and Rita were personally served with process. ECF Nos. 6, 7, 8, 9 (showing service dates on Defendants ranging from October 31 to November 2, 2020). None of the Defendants answered or filed a responsive pleading within twenty-one days of service. Thus, on November 25, 2020, Wilmington asked the Clerk to enter default against Defendants and concurrently filed this Motion for Default Judgment. ECF Nos. 10, 11. The Clerk of Court made entry of default as to all Defendants on November 30, 2020. ECF No. 12.

---

[2] Defendant Maria, as a signatory to the Loan Agreement, is a defendant both in her own right and as an heir-at-law under Texas Estates Code Sections 201.002–003.

## II. Discussion

### A. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure provides that the clerk must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise . . . ." Fed. R. Civ. P. 55(a). Once the clerk has entered default, "a plaintiff may apply to the district court for a judgment based on such default." *Ocwen Loan Servicing, LLC v. Kingman Holdings, LLC*, No. 3:18-cv-1197-S, 2018 WL 7150247, at *2 (N.D. Tex. Dec. 14, 2018), *R. & R. adopted by* 2019 WL 399900 (N.D. Tex. Jan. 31, 2019). Initially, a plaintiff must establish that: (1) the defendant has been served with summons and the clerk has entered default against the defendant; (2) the defendant is neither a minor nor an incompetent; (3) the defendant is not in military service or otherwise subject to the Servicemembers Civil Relief Act; and (4) the defendant was provided with notice of the motion for default judgment. *See* 50 U.S.C. § 3931; Fed. R. Civ. P. 55; *Kingman Holdings*, 2018 WL 7150247, at *2. In considering whether to enter default judgment, a court should first consider whether such entry is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Factors relevant to this inquiry include: (1) whether material issues of fact exist; (2) "whether there has been substantial prejudice"; (3) whether the plaintiff clearly established the grounds for default; (4) whether the defendant's default was caused by good faith mistake or excusable neglect; (5) "the harshness of a default judgment"; and (6) whether the court would feel obligated to set aside a default on the defendant's motion. *Id.* The court retains discretion whether to enter default judgment against a defendant. *Id.*

After the court has determined that the plaintiff has met the procedural requirements for default judgment, it must next "assess the substantive merits of the plaintiff's claims and determine

whether there is a sufficient basis in the pleadings for the judgment." *Bokf, N.A. v. Logan*, CIVIL ACTION No. 3:19-CV-2910-B, 2020 WL 1470803, at *2 (N.D. Tex. Mar. 26, 2020) (citing *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (quoting *Nishimatsu Constr. Co.*, 515 F.2d at 1206). Stated differently, when a defendant defaults, the plaintiff's well-pleaded allegations of fact concerning liability are deemed admitted. *Kingman Holdings*, 2018 WL 7150247, at *3 (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 521, 524–25 (5th Cir. 2002)). But "the default alone does not warrant entry of default judgment, as the Court must determine whether the well-pleaded facts state a claim upon which relief may be granted." *Id.*

Rule 8 of the Federal Rules of Civil Procedure further informs this analysis. "Rule 8(a)(2) requires a pleading to contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Wooten*, 788 F.3d at 498 (internal quotation marks omitted). "The factual allegations in the complaint need only be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal quotation marks omitted). Although a plaintiff need not plead "detailed factual allegations," it "must present 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**B. Analysis**

*1. Wilmington has satisfied the procedural requirements for obtaining default judgment.*

The record before the Court demonstrates Wilmington has satisfied the procedural requirements of Rule 55. Defendants were served according to law but have failed to answer or otherwise respond within the time permitted, and the Clerk of Court has entered default against

them. *See* ECF Nos. 6, 7, 8, 9, 12. Per the requirement of Rule 55 and 50 U.S.C. § 3931, Wilmington has also established that Defendants are not currently engaged in military service, and it has further provided evidence that Defendants are not minors or incompetent persons. *See* Mot. for Default J. Exs. A, A-1, ECF No. 11-1. Wilmington has certified that copies of the Motion for Default Judgment have been sent to Defendants. *Id.* at Ex. A.

In addition, all of the *Lindsey* factors favor granting default judgment. Defendants have filed no responsive pleadings; therefore, there are no material facts in dispute. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206 (explaining that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"). Second, Defendants' failure to answer or otherwise "respond has brought the adversary process to a halt, effectively prejudicing [Wilmington's] interests." *United States v. Fincanon*, No. 7:08–CV–61–O, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) (citing *Lindsey*, 161 F.3d at 893). Third, Defendants' default has been clearly established through their failure to respond and the Clerk's entry of default. *Logan*, 2020 WL 1470803, at *3 (citing *Lindsey*, 161 F.3d at 893). With respect to the fourth and fifth *Lindsey* factors, Defendants have not filed an answer despite being served with the Complaint more than six weeks ago, and there is no evidence to suggest that their failure to respond is a result of a good faith mistake. "[T]heir failure to respond mitigates the harshness of a default judgment." *Id.* (internal quotation marks and alterations omitted). Finally, the record contains no facts supporting a good cause reason to set aside the default were Defendants to challenge it. Because Wilmington has satisfied all of the procedural requirements for default judgment, the Court considers whether Wilmington's pleadings state a claim for relief.

*2. Wilmington's pleadings present a sufficient basis for entry of judgment.*

Wilmington asks the Court to enter default judgment against Defendants on liability and damages. Mot. for Default J. 3, ECF No. 11 [hereinafter Mot.]. Concerning damages, Wilmington does not seek a monetary award from Defendants; instead, it pursues a declaratory judgment establishing that it has a statutory probate lien against the property and that it is the owner and holder of the Note, beneficiary of the Security Instrument, and mortgagee as defined under Texas Property Code section 51.0001. *Id.* at 3–5. Wilmington also seeks entry of a judgment permitting foreclosure through a power of sale. *Id.*

Wilmington asserts that it has a statutory probate lien against the Property under the Loan Agreement and Texas Estates Code §§ 101.001(b) and 101.051, which provide that a decedent's estate and its debts immediately pass to the decedent's heirs. *Id.* at 4–5; Compl. 6; *see* Tex. Est. Code Ann. §§ 101.001(b), 101.051; *Ocwen Loan Servicing, LLC v. Deane*, Civil Action No. 4:15-cv-00682-O-BP, 2017 WL 6816499, at *3 (N.D. Tex. Dec. 1, 2017), *R. & R. adopted by* 2018 WL 309105 (N.D. Tex. Jan. 5, 2018). "The remedy of one holding an unpaid claim against the estate is to enforce a statutory lien against the property in the hands of the heirs, devisees, or legatees who receive estate property." *Deane*, 2017 WL 6816499, at *3 (citing *Potts v. W.Q. Richards Mem'l Hosp.*, 558 S.W.2d 939, 943 (Tex. Civ. App.—Amarillo 1977, no writ)). Wilmington asserts that Defendants are Benancio's heirs-at-law. Compl. 5, 9; Mot. 3. Thus, the District Judge should grant Wilmington's request for a declaration of its statutory probate lien.

A security instrument is a "deed of trust, mortgage, or other contract lien on an interest in real property." Tex. Prop. Code § 51.0001(6). A mortgagee includes the "grantee, beneficiary, owner, or holder of a security instrument . . . or if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." *Id.* at § 51.0001(4);

*Logan*, 2020 WL 1470803, at *4. Wilmington has shown that Wells Fargo transferred the Loan Agreement to it under an Assignment of Deed of Trust, filed in the public records of Lubbock County, Texas. Compl. Ex. C. Thus, the District Judge should grant Wilmington's request for a declaration that it is the owner and holder of the Note, beneficiary of the Security Instrument, and mortgagee as defined under Texas Property Code section 51.0001.

In addition, Wilmington, the mortgagee, seeks to enforce its statutory probate lien through foreclosure or public auction under Texas Property Code § 51.002. Compl. 6, 8; Mot. 3. "Section 51.002 of the Texas Property Code provides for the sale of real property pursuant to a security instrument with a power of sale." *Deane*, 2017 WL 6816499, at *3. To foreclose through a power of sale, the lender must show that: "(1) a debt exists; (2) the debt is secured by a lien created under art. XVI, § 50(a)(6) of the Texas Constitution; (3) the defendant is in default under the note and security instrument; and (4) the defendant received notice of default and acceleration." *Id.* (citing *Huston v. U.S. Bank Nat'l Ass'n*, 988 F. Supp. 2d 732, 740 (S.D. Tex. 2013), *aff'd*, 583 F. App'x 306 (5th Cir. 2014)).

Here, Wilmington has supported all four elements with well-pleaded allegations. Wilmington has provided a copy of the executed Note, demonstrating that a debt exists. Compl. Ex. A. Moreover, by providing a copy of the Security Instrument (Compl. Ex. B), Wilmington has shown that the debt is secured by a lien on the Property in accordance with Article 16, Section 50(a)(6) of the Texas Constitution. In addition, Wilmington has demonstrated that Defendants are in default on the Loan Agreement. Specifically, Wilmington has provided evidence of Benancio and Maria's default, as reflected by the July 7, 2020, Notice of Default, which states that the total balance due as of the date of the notice was $2,514.31. Compl. Ex. D. Because Benancio allegedly died intestate and no probate administration occurred, Defendants acquired his interest—and his

debt—in the Property under Texas law. *See* Compl. 5, 9; Mot. 3; *see also* Tex. Est. Code Ann. §§ 101.001(b), 101.051(b)(1). Thus, Wilmington has established that Defendants are in default. Finally, Wilmington has shown that it complied with the notice requirements contained within the Loan Agreement and the Texas Property Code when its mortgage servicer, Fay Servicing, LLC, sent written notices of default on July 7, 2020, and of acceleration on September 9, 2020, to Benancio and Maria's address of record.[3] Compl. Exs. D, E.

Thus, Wilmington has shown that: a debt exists; the debt is secured by a lien; Defendants are in default under the Loan Agreement; and it properly provided notice of the default and acceleration on the debt. Defendants' defaults serve as admissions of Wilmington's allegations. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. As discussed above, based on the uncontested record, Wilmington's Complaint establishes that Defendants, as heirs-at-law of Benancio, received an interest in the Property upon his death, and payments have not been made by any of the Defendants under the Loan Agreement since May 1, 2020. Compl. 5. The Court therefore finds that Wilmington's allegations warrant a declaratory judgment that, in accordance with its statutory probate lien, Wilmington may foreclose upon Defendants' interest in the Property at issue.

---

[3] Wilmington has not supplied evidence showing that it notified Defendants John, Justino, or Rita of the default and acceleration. The Texas Property Code, however, provides that a mortgage servicer "shall serve a *debtor* in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien . . . ." Tex. Prop. Code Ann. § 51.002(d) (emphasis added). The Court further observes that Wilmington has suggested that "some, if not all, of the heirs" may live at the Property to which the notices were mailed. *See* Compl. 5 ¶ 17. The Court finds that Wilmington, through its mortgage servicer, has satisfied the notice element despite its apparent failure to directly inform Defendants John, Justino, and Rita of the default and acceleration. *See Morgan v. Chase Home Fin., LLC*, 306 F. App'x 49, 55–56 (5th Cir. 2008) (agreeing with district court's conclusion that Texas law did not require mortgage servicer, in the event of the debtor's death, "to conduct some level of investigation to determine the legal heirs for purposes of proper notification prior to foreclosure"); *Deutsche Bank Tr. Co. Ams. for Residential Asset Mortg. Prods., Inc. v. Comstock*, Civil Action No. 3:16-CV-3210-G-BH, 2018 WL 3352992, at *9 (N.D. Tex. June 11, 2018) (finding mortgage servicer had satisfied fourth element (notice) necessary to obtain foreclosure through a power of sale by notifying the debtor, who was deceased, of the default and acceleration), *R. & R. adopted by* 2018 WL 3344374 (N.D. Tex. July 9, 2018); *cf. Fenimore v. Gonzales Cty. Sav. & Loan Ass'n*, 650 S.W.2d 213, 215 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.) (reversing lower court and setting aside foreclosure sales of real property where creditor failed to send notice of foreclosure sales to decedent, her estate, or estate's temporary administrator at decedent's last known address).

Wilmington also seeks judgment awarding it "attorneys' fees and costs of suit." *Id.* at 9; Mot. 4. In support of its request for attorney's fees, Wilmington references the Loan Agreement and Texas Civil Practice and Remedies Code Section 38.001. Mot. 4–5. The Security Instrument provides:

> If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence.

Compl. Ex. A, at 18. Texas law permits recovery of reasonable attorney's fees in claims concerning contracts. Tex. Civ. Prac. & Rem. Code § 38.001(8). The undersigned notes, however, that Wilmington has not provided any supporting evidence enabling the Court to determine what amount of attorney's fees would be reasonable in this case; instead, Wilmington requests that "[t]he amount of such fees . . . be determined by subsequent motion practice." Mot. 4. Because the Court does not have before it any documentation supporting an award for attorney's fees, the undersigned recommends that the Court consider the issue of attorney's fees post-judgment pursuant to Federal Rule of Civil Procedure 54(d)(2). *See U.S. Bank Nat'l Ass'n for Residential Asset Sec. Corp., Home Equity Mortg. Asset-Backed Pass-Through Certificates, Series 2007-KS2 v. McCormick*, No. 3:17-CV-1704-L, 2018 WL 1210555, at *3 (N.D. Tex. Mar. 8, 2018) (providing for post-judgment consideration of attorney's fees as authorized by Rule 54(d)(2)).

### III.   Recommendation

For these reasons, the undersigned recommends that the United States District Judge **GRANT** Wilmington's Motion for Default Judgment (ECF No. 11) and enter a default judgment granting Wilmington's requested relief.

## IV. Right To Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: December 23, 2020

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE